IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

UNITED STATES OF AMERICA,

Plaintiff, No. 4:20CR00160-SWW

v.

CLAYTON JACKSON,

Defendant.

Monday, November 2, 2020
Little Rock, Arkansas
11:09 a.m.

**TRANSCRIPT OF CHANGE OF PLEA HEARING**
BEFORE THE HONORABLE SUSAN WEBBER WRIGHT (BY VIDEO),
UNITED STATES DISTRICT JUDGE

APPEARANCES:

On Behalf of the Plaintiff:

MR. CHRIS GIVENS (BY VIDEO), Asst. United States Attorney
United States Attorney's Office
Eastern District of Arkansas
Post Office Box 1229
Little Rock, Arkansas 72203-1229

On Behalf of the Defendant:

MS. MOLLY K. SULLIVAN, Assistant Federal Defender
Federal Public Defenders Office
1401 West Capitol Avenue
Suite 490
Little Rock, Arkansas 72201

Defendant present

Proceedings reported by machine stenography and displayed in realtime; transcript prepared utilizing computer-aided transcription.

P R O C E E D I N G S

THE COURT: Good morning. This is a hearing in United States versus Clayton Jackson. I want to thank Mr. Jackson for agreeing to permit the Court to conduct this by video. At this time of COVID, we have to adapt and do different things for our own safety. So thank you very much for doing that.

Mr. Jackson is in the courtroom with his attorney, Ms. Molly Sullivan. And the United States is represented by Mr. Chris Givens, who is appearing, once again, remotely because of the COVID pandemic.

I would like first for Mr. Jackson to stand up. And, by the way, it's fine to remain seated for the most part during this hearing because it's important that you use a microphone. But here just out of respect for the procedure, if you would stand up and be sworn by the clerk, Mr. Jackson.

(Defendant sworn.)

THE COURT: You may be seated, Mr. Jackson.

Mr. Jackson, do you understand that you are now under oath and you need to answer my questions truthfully or you could later be prosecuted for perjury or making a false statement?

THE DEFENDANT: Yes, ma'am. Yes, ma'am. Yes, ma'am.

THE COURT: All right. Did you understand my question?

THE DEFENDANT: Yes, ma'am. Yes, ma'am.

THE COURT: All right. I'm going to be asking you

more questions, so I'm just telling you that. As you sit there, just speak into the microphone the way you've been doing, and that's good. Mr. Jackson, would you please state your full name.

THE DEFENDANT: Clayton Matthew Jackson.

THE COURT: Are you under the influence of any drugs or medicine or anything that might cause you to not understand this proceeding?

THE DEFENDANT: No, ma'am.

THE COURT: I want to ask your lawyer, Ms. Sullivan, have you visited with Mr. Jackson this morning?

MS. SULLIVAN: I have, Your Honor.

THE COURT: And do you believe he's competent to proceed?

MS. SULLIVAN: I do.

THE COURT: All right. We will proceed. I find that Mr. Jackson is competent to proceed.

Mr. Jackson, tell me how old you are.

THE DEFENDANT: Thirty-four.

THE COURT: And how much education do you have?

THE DEFENDANT: GED.

THE COURT: All right. Have you received a copy of this indictment that's pending against you?

THE DEFENDANT: Yes, ma'am.

THE COURT: Have you fully discussed this matter with

Ms. Sullivan?

THE DEFENDANT: Yes, ma'am.

THE COURT: Now, I have a couple of motions from you asking me to discharge your lawyer, Ms. Sullivan. Do you want to pursue those motions right now?

THE DEFENDANT: No, ma'am.

THE COURT: Are you completely satisfied with her advice?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. I want the record to reflect that he does not want to pursue these motions, and therefore the motions are hereby dismissed as moot.

I want to ask Mr. -- well, first I should ask Mr. Givens whether there has been a plea agreement.

MR. GIVENS: Your Honor, there's not a plea agreement in this case.

THE COURT: Thank you very much.

Now, Mr. Jackson, is this your understanding, that there has been no plea agreement with the United States in your case?

THE DEFENDANT: Yes, ma'am.

THE COURT: Has anyone made any other promise or assurance to you in an effort to get you to plead guilty?

THE DEFENDANT: No, ma'am.

THE COURT: All right. Is anyone trying to force you to plead guilty?

THE DEFENDANT: No, ma'am.

THE COURT: Do you understand that the offenses in this indictment are felonies?

THE DEFENDANT: Yes, ma'am.

THE COURT: And you understand that if your guilty plea is accepted, you will be adjudged guilty just as if a jury had found you guilty beyond a reasonable doubt?

THE DEFENDANT: Yes, ma'am.

THE COURT: And do you understand that this adjudication of guilt could deprive you of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on the jury and the right to possess any kind of firearm, including a hunting weapon?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand that you have a right to plead not guilty?

THE DEFENDANT: Yes, ma'am.

THE COURT: And if you plead not guilty, the government must prove beyond a reasonable doubt that you committed these offenses.

THE DEFENDANT: Yes, ma'am.

THE COURT: And you would have the right to an attorney and to a trial by a jury.

THE DEFENDANT: Yes, ma'am.

THE COURT: And you would have the right to

cross-examine witnesses against you and to call witnesses in your own behalf.

THE DEFENDANT: Yes, ma'am.

THE COURT: And you would not be required to testify against yourself.

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand that if the Court accepts your guilty plea there will be no trial, and you will have waived or given up your right to a trial as well as those other rights associated with a trial that I just mentioned?

THE DEFENDANT: Yes, ma'am.

THE COURT: Now, according to the file I have before me, you are charged in Counts 1 through 3 with threatening to murder a federal official and Counts 4 through 5 with mailing threatening communication. Do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand that for Counts 1 through 3 the maximum term of imprisonment under this statute is 10 years?

THE DEFENDANT: Yes, ma'am.

THE COURT: And the same for Counts 4 through 5. Do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: And do you understand for all of these counts the maximum fine per count is $250,000 under the statute?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand if the Court sentences you to a term of imprisonment the Court will also sentence you to a term of no more than three years of supervised release following imprisonment?

THE DEFENDANT: Yes, ma'am.

THE COURT: And do you understand that if you violate the terms of supervised release the court could revoke supervised release and sentence you to more time in prison?

THE DEFENDANT: Yes, ma'am.

THE COURT: And if that should happen, do you understand your total term of imprisonment could exceed any statutory maximums?

THE DEFENDANT: Yes, ma'am.

THE COURT: Again, the statutory maximums are 10 years on each count.

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you also understand that the Court must assess $100 by way of a sentence on each count of this indictment, each count for which you will be convicted that is, and that would be $500 for five counts?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand everything I have said so far concerning the statutory requirements to your sentence?

THE DEFENDANT: Yes, ma'am.

THE COURT: There are sentencing guidelines that judges must consider in determining the sentence in a criminal case. Do you understand that I won't be able to determine the guideline sentence for you until after the presentence report has been written and both you and the government have had an opportunity to challenge what's in that report?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand that after the judge determines what guideline applies to you the judge has the authority to impose a sentence that's either more severe or less severe than the sentence called for by the guidelines?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you also understand that under some circumstances you or the government may have the right to appeal the sentence imposed?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand that parole has been abolished and if you are sentenced to prison you will not be released on parole?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand that if the sentence is more severe than you expect you will still be bound by the guilty plea and will have no right to withdraw it?

THE DEFENDANT: Yes, ma'am.

THE COURT: I'm now going to ask that Mr. Givens tell

the Court what he would be prepared to prove should this matter go to trial. Mr. Jackson, please listen carefully because I will ask you about what Mr. Givens says.

Mr. Givens.

MR. GIVENS: Your Honor, if this case were to go to trial on the five counts in the indictment, the United States would prove that on February 4th, 2020, the FBI's Little Rock Division field office received a manila envelope through the United States Postal Service. In that envelope there was a single-page handwritten letter which was dated January 30th of 2020. The contents of that letter formed the basis for Count 1 and stated the following in relevant part.

"My name is Clayton Jackson. As you can see, I am currently in ADC serving a parole violation because your agent, Aaron Green, come to question me in Dewitt, Arkansas, in June 2019."

It goes on to say: "So you can make it clear to Agent Green that I swear before God above when I get out of this place -- and ADC can't hold me past 2022 -- I promise, not threaten, but promise I will kill his ass, take it at face value or whatever, but he will die. He's not going to play with my freedom. I know where the dumb-ass lives, and I will, me, no one else, will face him once I am home."

It was then signed Clayton Jackson, and it lists Clayton Jackson's ADC number. Aaron Green is a special agent working

for the FBI.

On March 9th, Little Rock Field Division of the FBI Public Affairs Specialist Connor Hagan received a manila envelope through the United States Postal Service, and it was addressed to him. Connor Hagan does work -- is an employee for the FBI. The handwritten letter, which is dated March 3rd, 2020, forms the basis for Count 2 and stated in relevant part the following.

"Agent Hagan, the purpose of this letter is to inform you and your coworker, Agent Aaron Green, that when I am released from this prison, I have two bullets with both your names on it. And I swear with everything in me, I will stop at nothing to kill both of you. So just know, you will be seeing me very soon. That's not a threat. It's a promise."

Again, it's signed by Clayton Jackson, and it lists his ADC number.

March 17th, FBI Special Agent Aaron Hurst met with Clayton Jackson in the ADC in Benton, Arkansas. Mr. Jackson spoke with Hurst and provided the following post-*Miranda* statements which form the basis for Count 3.

During Jackson's meeting with Agent Green, Jackson stated that at the conclusion of an interview that he had done with Special Agent Green, Special Agent Green gave him two business cards. One belonged to Special Agent Green. The other was for Connor Hagan, who Jackson said he assumed was an FBI investigator. During his interview with Special Agent Hurst,

Mr. Jackson repeatedly indicated this threat to kill FBI employees, particularly Special Agent Green, was, in fact, a sincere threat.

Some examples of the statements that he made include the following.

"When it comes to Aaron, it's not an idle threat. It's a guaranteed promise."

"I can't sit here and tell you that I'm not going to do something to Aaron Green because, I mean, I am."

Mr. Jackson also said, "It's not a threat. It's a promise. If you put me on a damn lie detector test or a voice stress analyzer test or anything else, I promise if you ask me if I was going to kill him, I would tell you 'yeah.' I promise you."

"I'm making these statements completely sane. I'm completely coherent. I understand what's being said. You read me my rights. You Mirandized me. I refused to talk to a lawyer. I mean, I even told you I didn't want to speak to a lawyer before you ever even turned on the recorder. I understand what's going on. I'm very aware that you know I can get charged with it. But, I mean, at the same time, I can't get a life sentence. I can't be sentenced forever."

Agent Hurst then told Jackson that it was illegal to threaten a federal law enforcement officer. Mr. Jackson responded, "Okay. Well, whatever. But what I'm saying is I do still feel that way."

Special Agent Hurst provided Mr. Jackson with copies of the two handwritten letters that he sent to the FBI. Mr. Jackson acknowledged writing and mailing both the January 30th and March 3rd letters, which forms the basis for Count 4 and 5. And he confirmed the signatures were, in fact, his. At the conclusion of the interview with Special Agent Hurst, Mr. Jackson made the following statements.

"You can tell Aaron that it's not a joke, that I'm really and truly not playing with him. He can take it at face value and take it however he wants, but it's a guarantee. I mean, it's a promise, or I'll die trying."

THE COURT: All right. Mr. Jackson, you have heard what Mr. Givens says he could prove with respect to the charges in this indictment. Is what he stated with respect to what you did substantially correct?

THE DEFENDANT: Yes, ma'am.

THE COURT: So how do you plead to Counts 1 through 5? Guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: I accept your guilty plea. I find that you actually committed these offenses as charged in the indictment, and I further find that you are entering your guilty plea voluntarily with full knowledge of the consequences. And so I will now refer you to the probation office for the presentence interview. You have the right to have Ms. Sullivan

with you during the interview.

Ms. Sullivan, have you arranged for this interview?

MS. SULLIVAN: Yes, Your Honor.

THE COURT: All right. I will not set a sentencing date today, Mr. Jackson. I like to set a sentencing date closer to the time when I know we can set a date and time certain. Mr. Jackson, do you have any questions for the Court with respect to this?

THE DEFENDANT: No, ma'am.

THE COURT: All right. Ms. Sullivan, are there any other matters that we need to take up on the record today?

MS. SULLIVAN: No, Your Honor.

THE COURT: All right. Same question, Mr. Givens.

MR. GIVENS: I have nothing further, Your Honor.

THE COURT: All right. Thank you. You are excused. The hearing is concluded.

(Proceedings concluded at 11:26 a.m.)

REPORTER'S CERTIFICATE

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/Elaine Hinson, RMR, CRR, CCR Date: April 21, 2021.
United States Court Reporter